UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

MITCHELL H. KOSSOFF,

                  Plaintiff,

   - against -

RICKEY S. FELBERBAUM and FLORIDA
FORECLOSURE ATTORNEYS, PLLC,

                 Defendants.

------------------------------------

14 Civ. 1144 (RWS)

OPINION

A P P E A R A N C E S:

      Attorney for Plaintiff MITCHELL H. KOSSOFF

      EISEMAN, LEVINE, LEHRHAUPT & KAKOYIANNIS, P.C.
      805 Third Avenue
      New York, NY 10022
      By:  Eric R. Levin, Esq.

      Attorney for Defendants RICKEY S. FELBERBAUM and
        FLORIDA FORECLOSURE ATTORNEYS, PLLC

      ESSNER & KOBIN, LLP
      50 Broadway
      New York, NY 10004
      By:  Howard Essner, Esq.

**Sweet, D.J.**

Florida Foreclosure Attorneys ("FFA"), a Florida law firm, and it's owner, Rick S. Felberbaum ("Felberbaum") (collectively, the "Defendants") move to dismiss and strike certain portions of the Complaint of Mitchell Kossoff ("Kossoff" or "Plaintiff"), which alleges that the Defendants owe Plaintiff 22% of FFA's net profits pursuant to an agreement.  Kossoff in turn moves for a declaratory judgment voiding a $575,000 promissory note owed to Defendants.

For the reasons set forth below, Defendants' motion to dismiss is granted in part and denied in part, Defendants' motion to strike is denied, and Kossoff's motion to declare the promissory note void is denied.

**Procedural History**

Kossoff commenced this lawsuit in New York state court on January 28, 2014.

On February 24, 2014, Defendants removed the case to Federal Court, and on March 3, 2014, Defendants moved to dismiss

1

Plaintiff's Complaint.  This motion was heard and marked fully submitted on April 30, 2014.

**Facts**

Felberbaum, a Florida Attorney, is the president and owner of FFA, a default service law firm which represents banks, mortgage lenders, creditors, and mortgage servicing companies. Felberbaum is also the owner of Resource Title Co., Inc., a title insurance company, and Felberbaum & Associates P.A., a law firm specializing in real estate closings (referred to in the Complaint as "the Related Entitles").  (Compl. ¶¶ 10-12.)

Kossoff is a New York attorney specializing in real estate transactions and litigations, with experience in law firm development and management.  (Compl. ¶¶ 7-8.)

Kossoff alleges that for almost 25 years, he served as Felberbaum's "trusted business advisor," in which capacity he rendered certain services and business advice.  (Compl. ¶ 15.) According to Kossoff, at the end of 2010, Felberbaum asked Kossoff to help address certain problems that FFA was facing and, in exchange for Kossoff's efforts, Felberbaum "indicated"

2

that he would grant Kossoff 22% of any net profits generated by
FFA (referred to in the Complaint as the "Consideration").
Under the agreement, FFA purportedly would not have to pay any
money to Kossoff "unless and until FFA was profitable." (Compl.
¶¶ 19, 21, 23.)

In fulfillment of this agreement, Kossoff alleges that
in or about May 2011 he agreed to become executive vice
president of FFA and began working to resolve the issues that
FFA and the Related Entities were facing. (Compl. ¶ 22.) His
duties included day to day operation and management of FFA and
the Related Entities; assisting in resolving certain litigation
against Felberbaum, FFA and the Related Entities; negotiating
and securing credit facilities; procuring malpractice insurance;
organizing case management, timekeeping and vendor payment
systems; and negotiating a lease for office space. As a result
of these services, Plaintiff alleges that FFA's gross receipts
increased from $3 million in 2010 to over $20 million by the end
of 2013. (Compl. ¶¶ 26-27.)

Kossoff further alleges that on April 17, 2012, the
parties "formalized their prior oral agreement in a writing
which indicated that Kossoff would be paid twenty-two percent

3

(22%) of the net profits of FFA as compensation for his services." (Compl. ¶ 23.)

Separately, Kossoff maintains that Felberbaum advanced payments to Kossoff and to other individuals at Kossoff's direction.  These payments were memorialized in a promissory note executed on December 1, 2013, in the principal sum of $575,000.  Kossoff contends that the parties intended these funds to be a set off against money that would be owed under the agreement.  (Compl. ¶¶ 24, 28.)

In April 2013, Felberbaum and FFA allegedly terminated Kossoff's position, denied that there was ever an agreement to pay Plaintiff 22% of FFA's net profits, and expected payment under the promissory note.  (Compl. ¶ 29.)  Kossoff commenced this lawsuit three days before full payment on the promissory note was due.

**The Applicable Standard**

On a motion to dismiss pursuant to Rule 12(b)(6), all factual allegations in the complaint are accepted as true, and all inferences are drawn in favor of the pleader. *Mills v. Polar*

4

*Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir. 1993). The issue
"is not whether a plaintiff will ultimately prevail but whether
the claimant is entitled to offer evidence to support the
claims." *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378
(2d Cir. 1995) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 235-36
(1974)).


     To survive a motion to dismiss pursuant to Rule
12(b)(6), "a complaint must contain sufficient factual matter,
accepted as true, to 'state a claim to relief that is plausible
on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)
(quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).
Plaintiffs must allege sufficient facts to "nudge[ ] their
claims across the line from conceivable to plausible." *Twombly,*
550 U .S. at 570. Though the court must accept the factual
allegations of a complaint as true, it is "not bound to accept
as true a legal conclusion couched as a factual allegation."
*Iqbal,* 129 S. Ct. at 1949 (quoting *Twombly,* 550 U.S. at 555).


     In ruling on such a motion, "the court may consider
any written instrument attached to the complaint as an exhibit
or incorporated in the complaint by reference, as well as
documents upon which the complaint relies and which are integral

5

to the complaint." *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005).  "Where a contract's language is clear and unambiguous, a court may dismiss a breach of contract claim on a Rule 12(b)(6) motion to dismiss." *Maniolos v. U.S.*, 741 F. Supp. 2d 555, 567 (S.D.N.Y. 2010) (citing *Advanced Mktg. Grp., Inc. v. Bus. Payment Sys., LLC*, 300 F. App'x 48, 49 (2d Cir. 2008)).

## I.   **Plaintiff Fails to Plead the Existence of a Valid Contract**

Plaintiff alleges that he and Defendants entered into an agreement, which was later formalized in a "writing," under which Kossoff was to be compensated for his services to FFA and Felberbaum with 22% of FFA's net profits and that Defendants breached this agreement in failing to pay Kossoff such profits. (Compl. ¶ 23.)

The only writing before the Court which could serve as such a formalized agreement is the April 17, 2012 Assignment of Membership Units Agreement (the "Membership Units Agreement") between Felberbaum ("Assignor") and Kossoff ("assignee"), which states in relevant part,

> Assignor hereby grants, assigns, transfers and conveys
> unto the Assignee, all of the Assigner's rights, title
> and ownership in and to 22 membership units in the
> Company to Assignee and Assignee hereby accepts the 22
> membership units from the Assignor.

(Declaration of Eric R. Levine, "Levine Decl."; Ex. 1.) Attached
to this, Kossoff signed a statement releasing any claim he would
have to any interest in FFA, through the agreement or otherwise.
That statement reads as follows:

> The undersigned, Mitchell H. Kossoff, hereby
> voluntarily and unconditionally relinquishes any and
> all right, title interest in and to the membership
> units and/or the company known as Florida Foreclosure
> Attorneys, PLLC (FFA) which are more fully detailed in
> the assignment of membership units agreement attached
> hereto as an exhibit and which is now null and void
> and of no further force of effect.

(*Id.*)

Assuming that Plaintiff's allegations are credited,
namely that Plaintiff's agreement was formalized in a writing
for 22% of the shares which constituted a contract, Kossoff's
second statement, releasing his claim to any such profit, on its
face voids the existence of any valid agreement.  Thus,
Plaintiff has not pled any contractual rights to FFA's profits,
or any contractual obligations to which Plaintiff is entitled
and which Defendants have breached.

Regardless, Plaintiff, who is not licensed to practice in Florida, cannot under Florida's state laws share in the profits of a law firm and any contract to that effect would be void as against public policy. Florida Disciplinary Rule DR-103 states: "A lawyer shall not form a partnership with a non-lawyer if any of the activities of the partnership consist of the practice of law." The only exceptions to that rule are as follows:

> A lawyer or law firm shall not share legal fees with a non-lawyer, except that:
>
> (1) An agreement by a lawyer with his firm, partner, or associate may provide for the payment of money, over a reasonable period of time after his death, to his estate or to one or more specified persons.
>
> (2) A lawyer who undertakes to complete unfinished legal business of a deceased lawyer may pay to the state of the deceased lawyer that proportion of the total compensation which fairly represents the services rendered by the deceased lawyer.
>
> (3) A lawyer or law firm may include non-lawyer employees in a retirement plan, even though the plan is based in whole or in part on a profit-sharing arrangement.

None of these exceptions are applicable to the instant case. Thus, to the extent that an agreement did exist, the contract alleged, which provided profit sharing to a non-lawyer of a law firm, was against Florida law. Accordingly, Kossoff could not have been assigned shares in FFA's profits—even if a

8

contract were adequately pled—and Plaintiff's breach of contract claim is dismissed. *See* Florida Disciplinary Rule DR-102, DR-103.

## II. Because there is no Valid Contract and Plaintiff Performed Certain Beneficial Services for the Defendants, Plaintiff has Adequately Pled a Claim for Unjust Enrichment

In the alternative to breach of contract, Kossoff claims that FFA and Felberbaum were unjustly enriched because of his services to the firm, and personally to Felberbaum.

Under both Florida and New York law, a claim of unjust enrichment "requires simply an allegation that (1) the defendant was enriched, (2) the enrichment was at the plaintiff's expense, and (3) the defendant's retention of the benefit would be unjust." *M'Baye v. World Boxing Ass'n.,* No. 05-9581(DC), 2006 WL 2090081, at *5 (S.D.N.Y. July 28, 2006). "The notion of unjust enrichment applies where there is no contract between the parties." *Id.* "While a party generally may not simultaneously recover upon a breach of contract and unjust enrichment claim arising from the same facts, it is still permissible to plead such claims as alternative theories." *Singer v. Xipto Inc.,* --- F.Supp.2d ----, 2012 WL 1071274, at *8 (S.D.N.Y. Mar. 20, 2012);

*see also Wilk v. VIP Health Care Servs., Inc.,* No. 10-5530(ILG)(JMA), 2012 WL 560738, at *5 (E.D.N.Y. Feb. 21, 2012) (noting that "while it is true that a claim for quantum meruit or unjust enrichment is precluded when a valid contract governing the same subject matter exists between the parties, a quantum meruit claim may be alleged alongside a breach of contract claim."); *Williams v. Wells Fargo Bank N.A.*, 11-21233-CIV, 2011 WL 4901346, at *7 (S.D. Fla. Oct. 14, 2011) (same).

Here, Plaintiff has not alleged the existence of a valid contract governing Plaintiff's efforts at FFA or for Felberbaum, and Plaintiff has pled—and Defendants do not dispute—that Kossoff did perform significant services for the Defendants, which resulted in certain financial improvements and benefits.  (Compl. ¶¶ 21-23.)  At this stage, it is unclear what compensation was provided or required for these services, and consequently whether Defendants were unduly enriched. Accordingly, accepting Plaintiff's well-pleaded allegations as true, Plaintiff has adequately established the existence of an unjust enrichment claim[1].

---

[1] Even if Defendants sufficiently alleged a claim for unclean hands, that doctrine is "peculiarly fact-specific, rendering dismissal on the skeletal basis of the pleadings inappropriate." *Broad. Music, Inc. v. Hearst/ABC Viacom Entm't Servs.*, 746 F. Supp. 320, 329-30 (S.D.N.Y. 1990).

10

**III. Plaintiff has not Pled the Existence of a Fiduciary Relationship or Complex Transaction Required for an Accounting**

Since the precise amount of money Kossoff believes is owed to him as part of FFA's profits is presently unknown, Kossoff also moves for an accounting of FFA's and the Related Entities' business operations, receipts and profits, as well as an accounting of all monies received by Felberbaum from FFA and the Related Entities. (Compl. ¶¶ 43-47.)

"The right to an accounting is premised upon the existence of a confidential or fiduciary relationship and a beach of the duty imposed by that relationship respecting property in which the party seeking the accounting has an interest." *Center for Rehabilitation and Nursing at Birchwood, LLC, v. S & L Birchwood, LLC*, 92 A.D.3d 711, 713 (2d Dep't 2012). Under New York law, a failure to allege a fiduciary relationship is thus fatal to a demand for accounting. *See, e.g.*, *Kosowsky v. Willard Mountain, Inc.*, 90 A.D.3d 1127, 1132 (2d Dep't 2011) (plaintiffs not entitled to accounting where they did not allege the existence of a confidential relationship and no such relationship was created by the lease at issue).

11

Even assuming that the Membership Units Agreement created a contract, no fiduciary relationship is alleged.  The agreement establishes only employee-employer or assignee-assignor relationships for a share of the profits, not a sharing of the losses.  As such, accounting is precluded.  *See Reichert v. N. MacFarland Builders, Inc.*, 85 A.D.2d 767, 768 (3d Dep't 1981) (accounting inappropriate where contract of employment only provides for a division of the profits and not a sharing of losses); *Alter v. Bogoricin*, 1997 WL 691332 at *15 (employee may not compel accounting if the employment relationship entails only a sharing of the profits, not a sharing of losses).

Florida law mandates the same result.  Though Florida law does provide for an equitable accounting in the absence of a fiduciary relationship, it does so only where a party shows the existence of a complex transaction and demonstrates that the remedy at law is inadequate.  *F.A. Chastain Constr. Inc. v. Pratt*, 146 So.2d 910, 913 (Fla. Dist. Ct. App. 1962) ("although courts of law have jurisdiction to enforce contract demands which involve an accounting, equity will take cognizance of cases where the contract demands between litigants involve extensive or complicated amounts and it is not clear that the

12

remedy at law is as full, adequate and expeditious as it is in equity."). Here, because Plaintiff has failed to allege any facts supporting either that FFA's net profits or compensation for his services involve "complex transactions" or that the remedy at law is inadequate, dismissal of this claim is appropriate. *See Nautica International, Inc. v. Intermarine USA, L.P.*, 5 F. Supp. 2d 1333, 1344 (S.D. Fla. 1998) ("It is well settled under Florida law . . . that an action for an accounting will not stand where plaintiff has not alleged the inadequacy of the remedy at law."); *Chiron v. Isram Wholesale Tours and Travel, Ltd.*, 519 So.2d 1102, 1103 (Fla. Dist. Ct. App. 1988) (affirming dismissal of cause of action for equitable accounting where the evidentiary facts alleged in the complaint "show neither complexity nor inadequacy of a legal remedy").

## IV.  **Plaintiff has not Adequately Alleged an Independent Basis to Sustain his Fraudulent Inducement Claim**

Kossoff additionally alleges that Felberbaum fraudulent induced him to enter into the agreement knowing that he had no intention of compensating Kossoff for his services, and as such that Kossoff is entitled to damages.

Under Federal Rule 9(b), to plead fraud a plaintiff must "state with particularity the circumstances constituting fraud or mistake" although "[m]alice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  To comply with Rule 9(b), "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Baena v. Woori Bank*, 515 F. Supp. 2d 414, 419-20 (S.D.N.Y. 2007) (citations omitted).  Fraudulent intent may be established "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Glidepath holding B.V. v. Spherion Corp.*, 590 F. Supp. 2d 435, 454 (S.D.N.Y. 2007) (citations omitted).  "[A] desire to avoid making future payments on an existing liability has been found to be a sufficient motive to survive Rule 9(b)." *Id.* at 455. Further, a plaintiff may bring a fraud claim alongside a breach of contract claim if the plaintiff "(i) demonstrate[s] a legal duty separate from the duty to perform under the contract; or (ii) demonstrate[s] a fraudulent misrepresentation collateral or

14

extraneous to the contract." *Bridestronge/Firestone, Inc. v. Recovery Credit Services, Inc.*, 98 F.3d 13, 20 (2d Cir. 1996).

Here, Plaintiff's allegations relating to fraudulent inducement are in no way extraneous to or independent of the alleged contractual agreement.

According to the Complaint, "[i]n late 2010/early 2011," Felberbaum orally assured Kossoff that "if he were to assume a more active role with FFA and help Felberbaum resolve these problems, that in return for all of Kossoff's prior efforts and in consideration of Kossoff's increased role and active participation in FFA and the Related Entities, that he would grant Kossoff a partnership interest in FFA and share any profits generated by FFA with Kossoff." (Compl. ¶ 19.)  The Complaint further alleges that "in or about May of 2011," Kossoff, in reliance on Felberbaum's oral representations, commenced working on assisting Felberbaum with resolving FFA's issues but that in April 2013, FFA terminated Kossoff, denied the existence of the agreement, and did not pay Plaintiff for his efforts.  (*Id.* ¶ 22.)  These allegations, in sum, maintain that Kossoff "never had any intention of paying any part of the Consideration" under the agreement.

"A fraud claim is not sufficiently stated where[, as here,] it alleges [only] that a defendant did not intend to perform a contract . . . when he made it." *Eastman Kodak Co. v. Roopak Enterprises, Ltd.*, 202 A.D.2d 220, 222 (1st Dep't 1994) (internal quotation marks and citations omitted); *see also Mexican Hass Avacado Importers Ass'n v. Preston/Tully Group Inc.*, 838 F. Supp. 2d at 98 ("Under New York law, a plaintiff cannot maintain a claim for both fraud and breach of contract where the alleged fraudulent misrepresentations are to the underlying terms of the contract."). None of the allegations relating to fraudulent inducement in the Complaint are in any way distinct from the obligations alleged under the agreement or provide any legal duty beyond the Membership Units Agreements' promise to pay a share of FFA's profits to Kossoff for his services. To the contrary, the allegations underlying both the fraudulent inducement claim and the breach of contract claim are identical. *See Low v. Robb*, 2012 WL 173472, at *6 (S.D.N.Y. Jan. 20, 2012) (to be collateral or extraneous to a contract, a fraudulent misrepresentation must be a promise to do something other than what is expressly required by the contract).

16

Plaintiff, citing *Graubard Mollen Dannett & Horowitz v. Moskovitz*, 86 N.Y.2d 112, 122 (1995), maintains that the fraudulent inducement claim is separate from the contract claim because the allegations relate to "oral assurances" made "prior to" the formation of the contract.  (Opp. Br. at 17.) However, in *Graubard*, the court explained that such "oral assurances" must not be "embodied in the terms of the agreement that was allegedly breached" and must provide an "independent basis" for the fraudulent inducement.  *Coppola v. Applied Electric Corp.*, 288 A.D.2d 41, 42 (1st Dep't 2001); *cf. Graal Enterprises, Ltd. V. Desourdy Int'l 1949 Inc.*, 95 Civ. 0752 (LMM), 1996 WL 353003 (S.D.N.Y. June 26, 1996) (where, "collateral or extraneous to the contact, a promise was made with a preconceived and undisclosed intention of not performing that promise, the intent to breach that promise can be a misrepresentation of material fact upon which an action for damages . . . may be based"). Here, as established, the alleged "oral assurances" pled are the exact same obligations and terms of the purported agreement.

Because Plaintiff fails to provide any independent basis for the fraudulent inducement claim collateral to or

extraneous from the agreement, the fraudulent inducement claim is dismissed[2].

## V.   **Plaintiff has not Established a Basis under which to Declare the Promissory Note Void**

As a separate cause of action, Plaintiff moves for a declaratory judgment that the promissory note is void for either fraud in the inducement or lack of consideration.  (Compl. ¶¶ 58, 60.)

On December 1, 2012, Kossoff executed a Restated Promissory Note in favor of FFA in the principal sum of $575,000 "for value received" (the "Note").  Under the Note, Kossoff agreed to make 14 equal interest-only monthly payments beginning on January 1, 2013.  Full repayment of the principle sum was due on February 1, 2014, simultaneously with the last monthly interest payment.  (*See* Levine Decl. Ex. 2.)  Plaintiff's Complaint was filed on January 27, 2014.

---

[2] Kossoff's claim also fails under Florida law, which requires that a plaintiff cannot succeed simply by labeling a breach of contract claim "fraud in the inducement" but rather the fraud must be separate from the performance of the contract.  *Joyeria Paris, SRL v. Gus & Eric Custom Services, Inc.*, 2013 WL 6633175, at *4 (S.D. Fla. Dec. 17, 2013) (fraudulent inducement claim dismissed where alleged false representation concerning commission that defendant would accept was same conduct as defendant's alleged breach of the parties' oral contract).

The sole allegation supporting fraudulent inducement as relating to the note is that "at all times Defendants Felberbaum and FFA knew that they had no intention of honoring their agreement with Kossoff or paying him the Consideration." (Compl. ¶ 59.)  As established, *see supra* 15-17, this allegation fails to justify a separate claim for fraud and for the same reasons cannot support the defense that FFA and Felberbaum fraudulently induced Kossoff to execute the Note.  *See Benderson Development Co., Inc. v. Hallaway Properties, Inc.*, 115 A.D.3d 339, 340 (4th Dep't 1985).

Kossoff's lack of consideration contention is equally inapplicable.  Even assuming that Kossoff's unsupported allegations of a valid contract requiring payment to him of a share in FFA's profits were sufficient—which they are not—Kossoff alleges that he did receive money from FFA, which went either directly to him or to others at this direction.  (Compl. ¶ 24.)  Lack of consideration is not a defense where the obligor concedes that he has received partial payment for his services. *See, e.g.*, *Carlin v. Jemal*, 68 A.D.3d 655, 656 (1st Dep't 2009) (defendant's concession that at least a portion of the note was funded defeats the defense of lack of consideration).

Accordingly, Kossoff's motion for a declaratory judgment voiding the Note is dismissed at this time.

## VI. Defendants' Motion to Strike Certain Portions of the Complaint is Denied as the Statements are Relevant to Plaintiff's Allegations

Finally, Defendants move to strike certain portions of the Complaint as scandalous and immaterial.

Pursuant to Fed. R. Civ. P. Rule 12(f), a party may move to strike from any pleading any "[r]edundant, immaterial, impertinent, or scandalous matter." Rule 12(1) is "designed to reinforce the requirement in Rule 8(c) that pleadings be simple, concise, and direct." *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litigation*, 218 F.R.D. 76, 78 (S.D.N.Y. 2003); *see also Doe v. Wash. Post Co.*, 12 Civ. 5054 (PAE), 2012 U.S. Dist. LEXIS 120876, *6 (S.D.N.Y. Aug. 24, 2012) ("When a complaint is not short and plain, or its averments are not concise and direct, the district court has the power, on motion or sua sponte, to dismiss the complaint or to strike such parts as are redundant or immaterial."). Although motions to strike are generally disfavored, "allegations may be stricken if they have no real bearing on the case, will likely prejudice the movant,

20

or where they have criminal overtones." *G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521, 555 (S.D.N.Y. 2002) (citations omitted). Stated differently, a court may strike matter from a complaint where its material is prejudicial. *Id.* (citing Wright Miller & Marcus, Fed. Prac. & Proc.: Civil 2d § 1382, at 714 (West 1994 & Supp. 2001)) ("Scandalous allegations . . . will often be stricken from the pleadings in order to purge the court's files and protect the subject of the allegations."); *see also Smith v. AVSC Int'l., Inc.*, 148 F. Supp.2d 302, 317 (S.D.N.Y. 2001) (same).

Included in the Complaint among the prior services that Kossoff allegedly performed on Felberbaum's behalf are allegations of "overseeing Felberbaum's personal bankruptcy" and "overseeing and resolution of many other personal issues or issues that Felberbaum encountered, including . . . the resolution of a very serious Bar Complaint which was lodged against him in 2009." (Compl. ¶ 16.)  The Complaint further describes Kossoff's efforts to help Felberbaum avoid a "serious sanction" and instead admit only to "minor misconduct," which allowed Felberbaum's continued practice, and an additional "disciplinary proceeding," which is not described in detail. (Compl. ¶¶ 17-19.)

21

However inflammatory, these allegations are pled to evidence the services Kossoff provided to Felberbaum, for which he seeks compensation. (*See, e.g.*, Compl. ¶¶ 16-17 (services performed included "overseeing Felberbaum's personal bankruptcy and the restructuring of his finances") and (with respect to the Bar Complaint, "Kossoff reviewed the entire Disciplinary Committee file, wrote several letters directly to the Disciplinary Committee on Felberbaum's behalf, implemented a strategy of response, advised Felberbaum's Florida counsel how to proceed and even appeared to give testimony")); *see also M'Baye v. World Boxing Ass'n*, 2007 WL 844552, at *4 (S.D.N.Y. Mar. 21, 2007) (it is settled that "a plaintiff's allegations—even if seemingly inflammatory—may remain so long as they have some relevance to the claims at issue."). Because the allegations are therefore relevant to Plaintiff's unjust enrichment claim, which remains, Defendants' motion to strike is denied. *See Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976).

22

**Conclusion**

Based upon the conclusions set forth above,
Defendants' Motion to Dismiss is granted in part and denied in
part, Defendants' Motion to Strike is denied, and Plaintiff's
Motion for a Declaratory Judgment voiding the Promissory Note is
denied.

It is so ordered.

**New York, NY**
**May  7 , 2014**

ROBERT W. SWEET
U.S.D.J.