UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X

MITCHELL KOSSOFF,

Plaintiff,

- against -

RICKEY FELDERBAUM and FLORIDA FORECLOSURE ATTORNEYS, PLLC,

Defendants.

----------------------------------------X

14 Civ. 1144 (RWS)

OPINION

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ____
DATE FILED: 4/4/16

A P P E A R A N C E S:

Attorneys for the Plaintiff

ESSNER & KOBIN, LLP
50 Broadway
New York, NY 10004
By: Howard Essner, Esq.

Attorneys for the Defendants

EISEMAN LEVINE LEHRHAUPT & KAKOYIANNIS, P.C.
805 Third Avenue
New York, NY 10022
By: Eric R. Levine, Esq.
Eric Aschkenasy, Esq.

**Sweet, D.J.,**

Defendants Rickey S. Felderbaum ("Felderbaum") and Florida Foreclosure Attorneys, PLLC ("FFA," together with Felderbaum, the "Defendants") have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56, seeking dismissal of the Complaint filed by plaintiff Mitchell Kossoff ("Kossoff" or the "Plaintiff"), and judgment in favor of the Defendants on their counterclaims. Based on the findings and conclusions set forth below, the motion is denied.

**Prior Proceedings**

Kossoff initiated this action on January 28, 2014, with the filing of a complaint in the Supreme Court of New York, New York County, alleging causes of action for breach of contract, unjust enrichment, fraud, and requests for an accounting and a declaratory judgment. (See Complaint, Dkt. No. 2 Ex. 1.) On February 24, 2014, the Defendants filed a notice of removal, bringing the action to this Court. (Dkt. No. 2.) The Defendants moved to dismiss on March 4, 2014. (Dkt. No. 4.) On May 7, 2014, the Court granted the motion to dismiss in part and denied it in part, leaving only the claim for unjust enrichment active. See generally Kossoff v. Felderbaum, No. 14 Civ. 1144,

2014 WL 1814030 (S.D.N.Y. May 7, 2014).[1]

On May 21, 2014, the Defendants filed their Answer, which included counterclaims for breach of contract and money had and received. (Dkt. No. 15.) Kossoff Answered the counterclaim on June 17, 2014. (Dkt. No. 17.) A long and contentious period of discovery ensued, with several contested motions (See, e.g., Dkt. Nos. 26, 29, 30, 32), culminating in the filing of the instant motion for summary judgment by the Defendants on October 23, 2015. (Dkt. No. 41.) The Plaintiff filed his opposition papers on November 16, 2015 (Dkt. Nos. 49 & 50) and the Defendants filed their reply on December 10, 2015. (Dkt. No. 54.) The motion was heard and marked fully submitted on January 14, 2016.

**Facts**

The following facts are taken from the parties Local Rule 56.1 Statements (Dkt. Nos. 43 & 49) and are not in dispute except where noted.

Kossoff and Felderbaum were New York lawyers, with a deep friendship dating back to 1987. In 1990, Felderbaum moved to

[1] Familiarity with the issues raised and decided in the Opinion on the motion to dismiss is assumed.

Florida, but the two remained close and spoke regularly.[2]  As

Felderbaum established himself in Florida (and built his

business, FFFA), Kossoff was his "trusted business advisor,"

providing both legal services and business advice on matters

including employment disputes and Felderbaum's personal

bankruptcy.

Kossoff did not have any set hours or responsibilities at

FFA, nor did he receive a salary in exchange for the services he

provided.  He also never sent Felderbaum or FFA a bill for work

performed on their behalf during the relevant period, although

he had sent two bills before, spaced five years apart.  Kossoff

did not keep accurate time records for the work performed for

FFA and Felderbaum, though he did at one point send Felderbaum a

122-page printout of time his law firm spent on FFA matters,

which he asserted had a value of $426,000.  Kossoff later said

that this was simply "a record keeping memo" rather than a bill,

and that the dollar figure was generated as if he were billing

---

[2] Kossoff disputes this and other facts alleged in the Defendants Local Rule
56.1 statement, but does so simply by asserting that the fact is disputed and
citing generally to a declaration by his attorney, Howard Essner, and its
exhibits.  These statements do not specify which exhibit or area of the
declaration is intended to support the factual dispute asserted, as required
by the Local Rules.  See Local Civil Rule 56.1(d) ("Each statement by the
movant or opponent . . . including each statement controverting any statement
of material fact, must be followed by a citation to evidence which would be
admissible . . . .").  Because the Plaintiff does not cite to any specific
evidence controverting the factual assertions made by the Defendants, all
well-established paragraphs in the Defendants' Local Civil Rule 56.1
statements are deemed admitted for the purposes of this motion.  See Local
Civil Rule 56.1(c,d).

at a rate of $450 per hour, although he and Felderbaum had never established a billing rate for his work. Kossoff did at one point arrange for one of his employees, Joseph Goldsmith, to be paid for work done on behalf of FFA.

Beginning in 2010, Felderbaum caused FFA to loan significant sums of money to Kossoff, reaching into the hundreds of thousands of dollars. On December 1, 2012, Kossoff drafted and signed a promissory note (the "Note") in favor of FFA, promising to pay $575,000 at 3% interest, in fourteen monthly installments beginning on January 1, 2013. The note also provided for 5% of the amount owed to be added to cover attorney's fees in the event of a collection due to default. Felderbaum contends that the Note memorializes the personal debts that Kossoff owed to FFA, while Kossoff contends that the note was never intended to represent a bona fide debt, but rather was intended to be written down in order to show a loss on FFA's taxes. Kossoff made interest payments on the Note through January 6, 2014.

In 2011 and 2012, FFA made several payments to Kossoff, or to an entity related to Kossoff named Burton Packaging. Kossoff repaid $265,000, resulting in an unpaid balance of $515,000. At his deposition, Kossoff confirmed that the $515,000 figure was correct. Felderbaum asserts that this debt is memorialized in the Note, but offers no evidence to support the conclusion, or

to explain why the Note would be for $575,000 if Kossoff owed only $515,000.

On April 17, 2012, Kossoff and Felderbaum signed an "Assignment of Membership Units Agreement," stating that Felderbaum was granting Kossoff 22 "membership units" in FFA, in exchange for consideration.  Kossoff later signed what he deemed a "renunciation," in which he "voluntarily and unconditionally relinquishe[d] any and all right, title and interest in and to the membership units" or FFA, and declared the Assignment of Membership Units Agreement to be void.


**Applicable Standard**


Summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The relevant inquiry on application for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52.  A court is not charged with weighing the evidence and determining its

truth, but with determining whether there is a genuine issue for trial. Westinghouse Elec. Corp. v. N.Y. City Transit Auth., 735 F. Supp. 1205, 1212 (S.D.N.Y. 1990) (quoting Anderson, 477 U.S. at 249). Where there are ambiguities in the factual evidence presented, the Court draws all inferences in favor of the nonmoving party. Chiang v. Donahoe, 579 F. App'x 39, 40 (2d Cir. 2014).

**Summary Judgment is Denied on the Unjust Enrichment Claim**

The Defendants put forward four arguments against the Plaintiff's claim for unjust enrichment: first, that it is duplicative of the breach of contract claim dismissed in the Court's May 7, 2014 Opinion; second, that Kossoff cannot recover because he performed his work gratuitously, without any expectation of compensation; third, that Kossoff cannot recover due to the "renunciation" document he signed; and fourth, that public policy prevents Kossoff from recovering money for services provided to a Florida law firm when he is not a Florida-barred attorney. The Defendants separately argue that in the event the unjust enrichment claim is not dismissed, Kossoff's damages should be limited to a measure arrived at by multiplying his reasonable hourly rate by the number of hours worked, and that the unjust enrichment claim against Felderbaum

should be dismissed, even if the claim against FFA is sustained.

The Unjust Enrichment Claim is Not Duplicative

The Defendants' argument that Kossoff's unjust enrichment claim is identical to the previously-dismissed breach of contract claim is best understood as being aimed not at the claim itself, but on a theory of damages advanced by Kossoff. In his interrogatory responses, Kossoff calculated the damages from the claim as 22% of FFA's past and future profits - a figure that would equate to his putative 22% ownership stake under the breach of contract theory rejected in the May 7, 2014 Opinion - or, in the alternative, the fair market value of the services he rendered. (Interrogatory Response, Dkt. No. 42 Ex. F at 8.) Kossoff then repeated the 22% damages figure at his deposition. (Deposition transcript, Dkt. No. 42 Ex. H at 93:6-15.)

The fact that Kossoff's preferred damages calculation on the unjust enrichment claim mirrors that of the dismissed breach of contract claim has no relevance to the question of liability. The unjust enrichment claim has three elements: first, that the defendant was enriched; second, that the enrichment was at the plaintiff's expense; and third, that the defendant's retention of the benefit would be unjust. See Kossoff, 2014 WL 1814030,

at *4 (quoting M'Baye v. World Boxing Ass'n, No. 05-9581(DC),
2006 WL 2090081, at *5 (S.D.N.Y. July 28, 2006). The Defendants
have conceded the first two elements when they acknowledge that
Kossoff performed substantial services on their behalf without
compensation. As to the third element, the similarity between
the two damages calculations may be relevant to the quantum of
benefits the Defendants received, but not to whether they are
justified in retaining it. Since the two claims are different,
and since the Plaintiff's interrogatory response clearly shows
that the 22% damages calculation is put forward in the
alternative, the unjust enrichment claim is not duplicative.


There is a Genuine Dispute as to Whether Kossoff Performed His
Services Gratuitously

     A plaintiff seeking to recover on a claim of unjust
enrichment must establish that he or she expected to be
compensated for the benefit provided to the defendant. See
Andrews v. Sotheby Int'l Realty, Inc., No. 12 Civ. 8824, 2014 WL
626968, at *11 (S.D.N.Y. Feb. 18, 2014); see also 4 Hour
Wireless v. Smith, No. 01 Civ. 9133, 2002 WL 31654963, at *2
(S.D.N.Y. Nov. 22, 2002). The Defendants put forward a number
of arguments in favor of the proposition that Kossoff performed
his services gratuitously. First, they note that Kossoff never
sent Felderbaum or FFA a bill or invoice for work performed

during the time period at issue in the litigation. Kossoff did send a printout of his time sheets at one point, and an estimate of the value of his services at $426,000, but he emphasized in later emails that he "did not mean to say at all that what I have given you out of love had a price tag to it - because it did not" and that "it was not my intention to offset legal fees from the monies owed to you." (Dkt. No. 42 Ex. N.) Second, the Defendants point to the length and intimacy of the friendship between Kossoff and Felderbaum, which lasted for a quarter-century, including periods of challenge in the lives of both men. Their email correspondence clearly shows that the two had great affection for one another, even as the relationship between them began to sour. Third, the Defendants note that Kossoff signed the "renunciation" document, disavowing any ownership interest in FFA. And fourth, the Defendants point out that Kossoff could not have expected payment for services rendered to FFA, since he could not share in the firm's profits because he was not a member of the Florida Bar.

While these points do support the proposition that Kossoff rendered his services gratuitously, they are also consistent with the proposition that the Plaintiff performed his services under the belief, correct or incorrect, that he had an ownership interest in FFA. The "Assignment of Membership Units Agreement" establishes that Kossoff had shares in FFA during at least part

of the period at issue, and it would follow that he would not bill for work provided to a firm that he believed was partly his. Conversely, Kossoff did sent a bill for work provided by his colleague, Joseph Goldsmith, who would not have shared the same ownership interest.

The Defendants correctly point out that any ownership interest held by Kossoff would have been terminated by the "renunciation" document or rendered void by Florida law, but the record supports the proposition that Kossoff believed his interest in FFA would continue unofficially even if it was wiped out on paper. In his deposition, when explaining the effect of the "renunciation," Kossoff testified:

> You know, I'm all aware of the fact, you know, that the 22 percent can't be used, you know, to say that I had a real membership interest. I knew that from day one. It's one of the reasons I voluntarily, when Rick [Felderbaum] pressed me, unilaterally gave up that piece of paper because it was worthless. It meant nothing. It was a promise in the future . . . . Because Rick and I were supposed to be partners, because Rick promised me that I would be his partner . . . .

(Deposition Transcript, Dkt. No. 42 Ex. H at 89:19-90:3, 91:22-24.) The proposition also finds support in the same email exchange the Defendants quote to establish that there was no "price tag" on Kossoff's services. In a December 8, 2012 email to Kossoff, Felderbaum indicates that the two friends understood that Kossoff would benefit financially from his and FFA's good fortune, even if Kossoff were not on the books as an owner.

Felderbaum writes that Kossoff discussing ownership of FFA was "simply not appropriate," but acknowledges that "we talked about years from now [and] millions of dollars," and that "I told you if I hit it big you'd be part of it. I still want that." (Email Exchange, Dkt. No. 42 Ex. N at 2-3). Later in the email exchange, Felderbaum writes that "[i]f the company goes as we all plan you should trust me to share the wealth." (Id. at 4.)

The record thus supports the proposition that Kossoff worked for free because he expected to benefit financially from FFA's success, whether the agreement was official or unofficial. Because there is a genuine issue of material fact regarding Kossoff's intent, summary judgment is inappropriate. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).


The "Renunciation" Document Does Not Preclude Recovery


The Defendants also contend that the "renunciation" document bars Kossoff's unjust enrichment claim. The document's language does not support their argument. In it, Kossoff agrees to relinquish "any and all right, title, and interest in and to the membership units and/or the company known as Florida Foreclosure Attorneys, PLLC." (Dkt. No. 42 Ex. P.) The document is clearly limited to Kossoff's ownership interest in FFA and makes no mention of the work Kossoff performed for the

firm or any claims he may have for its fair market value. (See id.) The cases cited by the Defendants are inapposite because they involve plaintiffs who sued to recover the value of interests they had released, while the benefit that Kossoff is seeking to recover from the Defendants - the value of the work he performed - is collateral to the ownership interest that he renounced. See Banca Commerciale Italiana v. N. Trust Int'l Banking Corp., 160 F.3d 90, 95-96 (2d Cir. 1998) (plaintiff seeking to recover the value of a guaranty it had released); Strong v. Strong, 277 A.D.2d 533, 534 (3d Dep't 2000) (defendant seeking to recover the value of an ownership interest he had transferred to another).

Public Policy Does Not Bar the Unjust Enrichment Claim

The Defendants separately argue that Kossoff's unjust enrichment claim should be barred as contrary to public policy, noting that Florida law prohibits attorneys who are not members of the Florida bar from practicing law in the state, see Fla. Stat. Ann. § 454.23, and that this prohibition would prevent an attorney from recovering fees for the unauthorized practice of law on an unjust enrichment theory. See Spance, Payne, Masington & Grossman, P.A. v. Philip M. Gerson, P.A., 483 So.2d 775, 778 (Fla. Ct. App. 1986).

The argument fails because it is unclear whether and to what extent Kossoff practiced law in Florida. The Defendants' draw their factual support on this point from two paragraphs of Kossoff's complaint, wherein he alleges that his services included

> overseeing Felderbaum's initial employment in Florida; his ultimate admission to the practice of law in the State of Florida and the advancement of his legal career; resolution of various employment disputes in which Felderbaum was embroiled; overseeing Felderbaum's personal bankruptcy and the restructuring of his finances; advising Felderbaum from time to time with respect to various business issues arising in connection with [other firms in which he had a stake], generally reviewing Felderbaum's intended purchase of FFA and/or its predecessor, the Golson Law Firm, and the overseeing and resolution of many other personal crises or issues that Felderbaum encountered, including [] the resolution of a very serious Bar Complaint which was lodged against him in 2009.

(Complaint, Dkt. No. 2 Ex. 1 ¶ 16.) As part of his work defending Felderbaum from the bar complaint, Kossoff wrote several letters to the relevant disciplinary committee, advised Felderbaum's Florida lawyer on how to proceed, and appeared on behalf of Felderbaum at a hearing. (Id. ¶ 17.) These paragraphs indicate that Kossoff's services included a mix of legal and non-legal work, in contrast with the cases cited by the Defendants, which involved only the practice of law. See, e.g., Morrison v. West, 30 So.3d 561 (Fla. Dist. Ct. App. 2010) (representing client on Florida probate dispute); Vista Designs, Inc. v. Silverman, 774 So.2d 884, 888 (Fla. Dist. Ct. App. 2001)

(representing client in Middle District of Florida patent case, where lawyer provided representation, rather than mere consulting).

While it seems clear that certain of those services rendered by Kossoff, such as appearing on Felderbaum's behalf at his bar disciplinary hearing, were legal in nature, the record is unclear as to the percentage of the services that were legal, as opposed to business-related. The record is also unclear as to how much of Kossoff's services involved the actual practice of Florida law, as opposed to "mere legal support or consulting." See Vista Designs, 774 So.2d at 888. Because factual ambiguities must be resolved in favor of Kossoff as the nonmoving party, see Chiang v. Donahoe, 579 F. App'x 39, 40 (2d Cir. 2014), the fact that Kossoff's services were partially legal in nature cannot bar his unjust enrichment claim in its entirety.

Kossoff's Damages Are Limited to the Value of the Services Performed

The Defendants object to Kossoff's assertion in his interrogatory responses and at his deposition that the value of his unjust enrichment claim should be equal to the 22% of FFA's profits.

Citing to the Honorable Alvin Hellerstein's holding in

Carlino v. Kaplan, they contend that the value of Kossoff's services should be limited to "an hourly rate for the amount of time services [] are rendered." See Carlino, 139 F. Supp. 2d 563, 565 (S.D.N.Y. 2001). While the Defendants are correct that "profits per se have no place in quantum meruit recovery,"[3] id. (citing Magann Corp. v. Diamond Mfg. Co., 775 F.2d 1202 (4th Cir. 1985)), Carlino cannot be read to require that recovery on an unjust enrichment claim be calculated via an hourly rate. Judge Hellerstein's Opinion acknowledges that an hourly rate is used "[f]or the most part," but also that there are "well-recognized exceptions" to the rule, where "the value of the benefit conferred is likely to be disproportionate to the value of the services rendered, causing unjust and inequitable results if compensation were to be based on hourly rates rather than the benefits that were appointed." Id. These exceptions are simply applications of the principle that the measure of damages for an unjust enrichment claim is the reasonable value of the benefit conferred, and is "measured by a defendant's unjust gain, rather than by a plaintiff's loss." Schatzki v. Weiser Capital Mgmt., 995 F. Supp. 2d 251, 253 (S.D.N.Y. 2014) (quotation omitted); see also New Windsor Volunteer Ambulance Corps, Inc. v. Meyers, 442 F.3d 101, 118 (2d Cir. 2006) (noting that where a party that

[3] Under New York law, quantum meruit and unjust enrichment are interchangeable causes of action. Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 175 (2d Cir. 2005).

breaches a contract can recover on quantum meruit, "the amount to which he is entitled is measured not by the contract price but rather by the reasonable value of the services rendered").

On the record before the Court, there is no basis for the proposition that the value received by Felderbaum for Kossoff's work amounts to anywhere near 22% of FFA's past and future profits. However, there are also no grounds for the Court to conclude that the value of those services to Felderbaum must necessarily equal Kossoff's regular billing rate. While the hourly rate represents a reasonable and effective way to establish damages, see Carlino, 139 F. Supp. 2d. at 565, to the extent that Kossoff can prove that the value of his work exceeded that amount, he will have the opportunity to make the showing at trial.

The Unjust Enrichment Claim Can Proceed Against Both Defendants

Lastly, the Defendants argue that even if the Court allows the unjust enrichment claim to survive summary judgment, the portion of the claim that is stated against Felderbaum personally, as opposed to FFA, must be dismissed. The Defendants argue, without citing any source, that the benefit of Kossoff's services went only to FFA, rather than to Felderbaum. However, several of the alleged services, such as Kossoff's

assistance with Felderbaum's personal bankruptcy and support in his bar disciplinary action, appear to have been provided to Felderbaum himself, rather than to his firm. Summary judgment on the claim against Felderbaum individually is therefore inappropriate.

**Summary Judgment is Granted as to Liability on the Breach of Contract Counterclaim**

The Defendants have also moved for summary judgment on their breach of contract counterclaim based on Kossoff's failure to pay the amount due on the promissory note. "To succeed on a motion for summary judgment, a plaintiff suing on a promissory note needs to merely establish the absence of a genuine issue as to the execution and default unless the obligor demonstrates the existence of a triable issue of fact." Customers Bank v. Anmi, Inc., No. 11 Civ. 7992, 2012 WL 6629100, at *2 (S.D.N.Y. Dec. 20, 2012). Here, "there is no dispute that the document exists and was signed by plaintiff." (Pl.'s Opp. Br., Dkt. No. 50, at 5.) Similarly, Kossoff does not contend that he paid the money due on the note. Thus, the Defendants have made a *prima facie* case on the counterclaim, and the burden shifts to the Plaintiff "to establish, by admissible evidence, that a triable issue of fact exists." Hack v. Stang, No. 13 Civ. 5713, 2015 WL 5139128,

at *2 (S.D.N.Y. Sept. 1, 2015).

Kossoff challenges the validity of the note by arguing that the note "was for a tax advantage and not a bona fide loan." (Pl.'s Opp. Br. at 6.) Under this version of events, Kossoff drafted and signed the note so that FFA could write the amount off on its taxes, but the parties never expected him to actually pay the amount indicated.

The Defendants argue that the parol evidence rule bars Kossoff from adducing evidence of a separate contemporaneous agreement, but under New York law "a defendant may demonstrate by parol evidence that a note that appears to be facially valid was never intended to take effect and is not a binding obligation." Wachtel Masyr & Missy LLP v. Genger, 568 F. App'x 10, 12 (2d Cir. 2014).

Kossoff's evidence, however, is not sufficient to defeat summary judgment. In order to support his theory, Kossoff points to statements by Felderbaum indicating that the note was drafted for tax purposes, but while the exchanges at issue do indicate that tax considerations were the reason the note was drafted, they also support the Defendants' contention that the note was meant to be repaid. (See, e.g., Dkt. No. 42 Ex. N at 1 (Felderbaum writes "All I ask is that when you start getting some fees in that you pay down as quickly as you can. The CPA wants a note so we want that as part of my tax file. I have to

account for the money."); id. at 5 (Kossoff writes, in response to the request for a note, "I have no problem converting these monies and the other funds advanced by FFA (which I thought would eventually be offset by distributions on my 22 percent) into a personal loan from you to me - in fact it helps me with my own tax picture to some extent."). Furthermore, while New York law provides for an exception to the parol evidence rule in the promissory note context, it also establishes an exception to the exception in cases such as this one where the alleged collateral agreement was fraudulent in nature. "As a matter of public policy, parol evidence is inadmissible to support a defense that promissory notes were prepared as part of a scheme to defraud the Internal Revenue Service." Cooper v. Cooper & Clement, 198 A.D.2d 812, 813 (4th Dep't 1993); accord Bersani v. General Accident Fire & Life Assur. Corp., 36 N.Y.2d 457, 461 (1975) ("But when the outcome of the admission of parol evidence . . . would be contrary to law and public policy, such proof would be inadmissible and the written contract of insurance would be enforced according to its terms."); Brass Const. v. Muller, No. 98 Civ. 5452, 2001 WL 1131986, at *4 (S.D.N.Y. Sept. 25, 2001) ("A party will not be permitted to claim that a written contract was a sham if the purpose of the subterfuge was contrary to public policy. Thus, for example, if the parties to the written contract intended to use it to defraud tax

authorities or bank regulators, they will not be allowed to disavow it later.”).

Because there is no genuine dispute that the note was intended to be repaid, and because evidence to support the Plaintiff’s contrary theory would be inadmissible, the Defendants’ motion for summary judgment on the note is granted as to liability. However, since the evidence currently before the court is insufficient to quantify the balance on the note that remains unpaid, summary judgment on the issue of damages is denied.

**Conclusion**

The Defendants’ motion for summary judgment is granted in part and denied in part, as set forth above.

It is so ordered.

**New York, NY**
**~~March~~ April 1, 2016**

**ROBERT W. SWEET**
**U.S.D.J.**