UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
MITCHELL H. KOSSOFF,                   : Case No. 14 Civ. 1144 (RWS)
                                       :
            *Plaintiff*,                :
    -against-                          : **PLAINTIFF'S STATEMENT OF**
                                       : **THE ELEMENTS OF CLAIM OR**
RICKEY FELBERBAUM and FLORIDA          : **DEFENSE PURSUANT TO**
FORECLOSURE ATTORNEYS, PLLC,           : **INDIVIDUAL PRACTICES OF**
                                       : **JUDGE ROBERT W. SWEET**
            *Defendants*.               : **SECTION 3(B)(ii)**
---------------------------------------------------------------x

Plaintiff/counterclaim defendant Mitchell H. Kossoff ("Plaintiff") submits this Statement of Elements of Each Claim or Defense in accordance with Section 3(B)(ii) of the Court's Individual Practices.

Pursuant to the prior orders if this Court, two issues remain to be tried: (1) Plaintiff's claim against Defendants for Unjust Enrichment; and (2) the amount of damages owed by Plaintiff to FFA pursuant to the Note, dated December 1, 2012 (hereinafter, the "Note").

**PLAINTIFF'S CLAIM FOR UNJUST ENRICHMENT**

Pursuant to this Court's Order dated May 7, 2014, a claim for Unjust Enrichment lies when: (1) the defendant was enriched; (2) the enrichment was at the plaintiff's expense; and, (3) the defendant's retention of the benefit would be unjust. *Opinion of J. Sweet*, dated May 7, 2014, at p. 9. *See also, M'Baye v. World Boxing Ass'n.*, No. 05-9581 (DC), 2006 WL 2090081 at *5 (S.D.N.Y. July 28, 2006). As stated in the Opinion of J. Sweet, dated May 7, 2014 at page 10, "…accepting Plaintiff's well-pleaded allegations as true, Plaintiff has adequately established the existence of an unjust enrichment claim." (citations omitted). Moreover, this Court, in its Order dated April 1, 2016, has already found that "…(t)he Defendants have conceded the first two elements[*] when they

---

[*] These are the first two prongs of the unjust enrichment claim set forth above, i.e. that the defendant was enriched and the enrichment was at the plaintiff's expense.

acknowledged that Kossoff performed substantial services on their behalf without compensation. As to the third element, the similarity between the two damages calculations may be relevant to the quantum of benefits the Defendants received, but not to whether they are justified in retaining it. Since the two claims are different, and since the Plaintiff's interrogatory response clearly shows that the 22% damages calculation is put forward in the alternative, the unjust enrichment claim is not duplicative." *Opinion of J. Sweet*, dated April 1, 2016, at p. 9.

**Plaintiff Will Prove at Trial That Defendants' Retention of the Benefit Would be Unjust**

In an effort to convince this Court that Plaintiff cannot satisfy the third prong of the test, i.e. that defendant's retention of the benefit would be unjust, Defendants set forth three basic defenses, i.e. that Plaintiff had agreed to perform these services gratuitously; that the Plaintiff renounced his interest in FFA and that therefore he is barred from maintaining this action for unjust enrichment; and that public policy bars an award to Plaintiff in connection with his unjust enrichment claim. However, these defenses cannot succeed at trial based upon prior rulings from this Court and the overwhelming parole and documentary evidence which Plaintiff intends to introduce at trial.

**Plaintiff Did Not Perform His Services Gratuitously**

The Court found in its prior decision dated April 1, 2016, that there was a genuine dispute as to whether Kossoff performed his services gratuitously. In this regard, the Court noted as follows:

> "…(w)hile these points do support the proposition that Kossoff rendered his services gratuitously, they are also consistent with the proposition that the Plaintiff performed his services under the belief, correct or incorrect, that he had an ownership interest in FFA. "…In a December 8, 2012 email to Kossoff, Felberbaum indicates that the two friends understood that Kossoff would benefit financially from his and FFA's good fortune, even if Kossoff were not on the books as an owner. Felberbaum writes that Kossoff discussing ownership of FFA was "simply

- 2 -

not appropriate," but acknowledges that "we talked about years from now [and] millions of dollars," and that "I told you if I hit it big you'd be part of it. I still want that." (Email Exchange, Dkt. No. 42 Ex. N at 2-3). Later in the email exchange, Felberbaum writes that "[i]f the company goes as we all plan you should trust me to share the wealth." (Id. at 4.) ... The record thus supports the proposition that Kossoff worked for free because he expected to benefit financially from FFA's success, whether the agreement was official or unofficial. Because there is a genuine issue of material fact regarding Kossoff's intent, summary judgment is inappropriate. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)."

*Opinion of J. Sweet*, dated April 1, 2016, at pp. 10-12.

Plaintiff will introduce at trial: (a) his own testimony; (b) testimony from an AA expert; (c) testimony from the Honorable Sally E. Unger, (Plaintiff's former law partner); (d) admissions from Defendant Rick Felberbaum; and (e) a multitude of other documents – all of which will demonstrate that both parties believed that Plaintiff was to be compensated for his services and that there is no merit to Defendants' defense that Plaintiff performed these services gratuitously based upon his alleged sponsorship of Defendant Felberbaum or because of their friendship.

**Defendants' Defenses of Renunciation, Public Policy and Unclean Hands Have No Merit**

This Court has also already ruled as a matter of law in its decision dated April 1, 2016, that the renunciation document does not preclude recovery on Plaintiff's unjust enrichment claim, nor does public policy bar the same. To dispose of this argument, all one needs to do is to refer to the findings of the Court in its Opinion dated April 1, 2016. As to the renunciation defense the Court had the following to say:

"The Defendants also contend that the "renunciation" document bars Kossoff's unjust enrichment claim. The document's language does not support their argument. In it, Kossoff agrees to relinquish "any and all right, title, and interest in and to the membership units and/or the company known as Florida Foreclosure Attorneys, PLLC." (Dkt. No. 42 Ex. P.) The document is clearly limited to Kossoff's ownership interest in FFA and makes no mention of the work Kossoff performed for the firm or any claims he may have for its fair market value. (See id.) The cases cited by the Defendants are inapposite because they involve plaintiffs who sued to recover the value of interests they had released, while the benefit that Kossoff is seeking to recover from the Defendants – the value of the

work he performed – is collateral to the ownership interest that he renounced. See Banca Commerciale Italiana v. N. Trust Int'l Banking Corp., 160 F.3d 90, 95-96 (2d Cir. 1998) (plaintiff seeking to recover the value of a guaranty it had released); Strong v. Strong, 277 A.D.2d 533, 534 (3d Dep't 2000) (defendant seeking to recover the value of an ownership interest he had transferred to another)."

*Opinion of J. Sweet*, dated April 1, 2016, at pp. 12-13.

Moreover, the Court went on to state in no uncertain terms that Defendants' public policy and its corollary unclean hands defenses do not pose a per se bar to a recovery by Plaintiff and indicated as follows:

"…(t)he Defendants separately argue that Kossoff's unjust enrichment claim should be barred as contrary to public policy, noting that Florida law prohibits attorneys who are not members of the Florida bar from practicing law in the state, see Fla. Stat. Ann. § 454.23, and that this prohibition would prevent an attorney from recovering fees for the unauthorized practice of law on an unjust enrichment theory. See Spance, Payne, Masington & Grossman, P.A. v. Philip M. Gerson, P.A., 483 So.2d 775, 778 (Fla. Ct. App. 1986) … The argument fails because it is unclear whether and to what extent Kossoff practiced law in Florida…" As part of his work defending Felberbaum from the bar complaint, Kossoff wrote several letters to the relevant disciplinary committee, advised Felberbaum's Florida lawyer on how to proceed, and appeared on behalf of Felberbaum at a hearing. (Id. ¶ 17.) These paragraphs indicate that Kossoff's services included a mix of legal and non-legal work, in contrast with the cases cited by the Defendants, which involved only the practice of law…While it seems clear that certain of those services rendered by Kossoff, such as appearing on Felberbaum's behalf at his bar disciplinary hearing, were legal in nature, the record is unclear as to the percentage of the services that were legal, as opposed to business-related. The record is also unclear as to how much of Kossoff's services involved the actual practice of Florida law, as opposed to "mere legal support or consulting…"

*Opinion of J. Sweet*, dated April 1, 2016, at pp. 13-15

Plaintiff will prove at trial through his testimony and documentary evidence that at no time did he render services that could be construed as practicing law in the State of Florida; that all services rendered for which he seeks compensation were either legal support or consulting; and/or were non-legal in nature; and/or were rendered in Plaintiff's capacity as Executive Vice President of FFA. A non-exhaustive catalog of those services rendered which form the basis of the unjust

- 4 -

enrichment claim can be found listed in ¶¶19, 20 and 26 of the Complaint filed in this matter dated January 28, 2014.

**Plaintiff Will Prove the Value of the Services Which Form the Basis of His Unjust Enrichment Claim at Trial**

As to the measure of Plaintiff's damages and what the proper standard of proof should be, again, a review of this Court's Opinion dated April 1, 2016 is instructive. In this regard this Court noted as follows:

> "The Defendants object to Kossoff's assertion in his interrogatory responses and at his deposition that the value of his unjust enrichment claim should be equal to the 22% of FFA's profits…, they contend that the value of Kossoff's services should be limited to "an hourly rate for the amount of time services [] are rendered." While the Defendants are correct that "profits per se have no place in quantum meruit recovery, Carlino cannot be read to require that recovery on an unjust enrichment claim be calculated via an hourly rate. Judge Hellerstein's Opinion acknowledges that an hourly rate is used "[f]or the most part," but also that there are "well-recognized exceptions" to the rule, where "the value of the benefit conferred is likely to be disproportionate to the value of the services rendered, causing unjust and inequitable results if compensation were to be based on hourly rates rather than benefits that were appointed." Id. These exceptions are simply applications of the principle that the measure of damages for an unjust enrichment claim is the reasonable value of the benefit conferred, and is "measured by a defendant's unjust gain, rather than by a plaintiff's loss… On the record before the Court, there is no basis for the proposition that the value received by Felberbaum for Kossoff's work amounts to anywhere near 22% of FFA's past and future profits. However, there are also no grounds for the Court to conclude that the value of those services to Felberbaum must necessarily equal Kossoff's regular billing rate. While the hourly rate represents a reasonable and effective way to establish damages, to the extent that Kossoff can prove that the value of his work exceeded that amount, he will have the opportunity to make the showing at trial." (citations omitted)

*Opinion of J. Sweet*, dated April 1, 2016, at pp. 15-17

Plaintiff will introduce at trial both testimony and exhibits, as well as expert testimony, in order to prove the value of the services received by Defendants, which as the Court appropriately noted "can certainly be something more than Kossoff's regular billing rate". As to the value of

- 5 -

those services, the Plaintiff intends to introduce a number of documents and as well testimony, including but not limited to the following:

    (a)    profit and loss statements provided by Defendants themselves which demonstrate that for the four-year period following the date when services were first provided, Defendant FFA's total average income rose from $2.7 Million to $13.7 Million, and the net income for this same four-year period (even after Defendant Felberbaum deducted his own salary and expenses) rose from $5,659 to a 4-year average of $1,600,000 per year;

    (b)    the renounced share participation agreement and the text negotiations leading up to the same, which at the very least offer some indication of what the parties themselves thought the value of Plaintiff's services to be;

    (c)    admissions from the Defendant Felberbaum as to the amount of time spent by Plaintiff in rendering the services which form the basis of Plaintiff's claim;

    (d)    the testimony of Plaintiff himself, as well as his former law partner, the Honorable Sally E. Unger as to the amount of time spent by Plaintiff, in rendering the services for which compensation is being sought;

    (e)    over 8,000 pages of emails and other documentary exhibits which will demonstrate the enormous scope of the services and work provided by Plaintiff to Defendants; and

    (f)    testimony from Plaintiff's expert, Ronald G. Quintero, and his report dated October 2015, in order to aid the Court in determining the appropriate amount due Plaintiff in connection with his claim.

**Defendants' Counterclaim for Damages on the Note**

As is more fully set forth in the Declaration of Howard Essner, Esq. dated October 26, 2016, and in an effort to streamline the trial in this matter, Plaintiff indicated as follows:

> "...thus for the purposes of trial only, Plaintiff will concede that defendants are entitled to a set-off of $515,000.00 against the amount awarded to Plaintiff on his claim for unjust enrichment, which, Plaintiff believes will be far in excess of $515,000.00. Plaintiff is making the concessions herein for purposes of streamlining the trial of this action. Simply put, Plaintiff is willing to concede that Defendants are entitled to a set-off against any award Plaintiff receives on his claim for unjust enrichment. This concession is made notwithstanding Plaintiff's estoppel defense that no sums are actually due and owing on the Note inasmuch as, (a) FFA wrote off this note as a bad debt on its 2013 Federal Income Tax Return (notwithstanding that the note did mature until February of 2014); and (b) in the same year that Defendants wrote off the note as a bad debt, they also took a

deduction for legal fees paid to Plaintiff which, upon information and belief, were the amounts which formed the very basis of the Note now being sued upon."

Accordingly, Plaintiff will not be contesting at trial that the amount due to Defendants is the sum of $515,000 whether this obligation flows from the note itself or from those remaining balances due to Defendants after all monies that were traded back and forth between the parties were accounted for.

Dated: New York, New York
November 9, 2016

_____
Howard Essner
ESSNER & KOBIN, LLP
50 Broadway, 27th Floor
New York, New York 10004
Tel. 212-720-4949
Fax. 212-324-9292
hessner@esskolaw.com

*Attorney for Plaintiff*