UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X

MITCHELL H. KOSSOFF,

                Plaintiff,              14 Civ. 1144

    -against-                      OPINION

RICKY FELBERBAUM and FLORIDA
FORECLOSURE ATTORNEYS, PLLC,

                Defendants.

----------------------------------------X

A P P E A R A N C E S:

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/15/17

       Attorneys for Plaintiff

       EISEMAN LEVINE LEHRHAUPT & KAKOYIANNIS, P.C.
       805 Third Avenue, 10th Floor
       New York, NY 10022
       By:  Eric R. Levine, Esq.

       Attorneys for Defendant

       SHEARER & ESSNER, LLP
       50 Broadway
       New York, NY 10004
       By:  Howard Essner, Esq.

**Sweet, D.J.**

Defendants Rickey Felberbaum and Florida Foreclosure
Attorneys, PLLC ("Defendants") have moved *in limine* to:

1.     Disqualify Plaintiff's proposed expert witness,
Ronald Quintero ("Quintero");

2.     Preclude Susan Ulseth ("Ulseth") from testifying
since she was not designated as an expert witness;

3.     Prevent Plaintiff from claiming he owes any less
than $500,000 on the note;

4.     Compel Plaintiff to produce the exact Bates
numbers of his proposed trial exhibits instead of designating
composite exhibits.

For the reasons stated below, Defendants' motions are
granted in part and denied in part.

1

**I.   Prior Proceedings**

This is contract action for unjust enrichment for services
provided and a counterclaim for payment under a note.  The Court
assumes familiarity with its prior opinions including a motion
to dismiss opinion issued on May 7, 2014 granting and part and
denying in part Defendants' motion to dismiss (only allowing the
unjust enrichment claims to proceed) and two motions for summary
judgment on April 1, 2016 and September 9, 2016 finding that
material issues of fact precluded summary judgment on the issues
of unjust enrichment and the outstanding balance of the note.

The instant motions *in limine* were heard and marked fully
submitted on November 3, 2016.

**II.   The *In Limine* Motions**

**1.   Admissibility of Quintero**

"The party seeking to introduce and rely on expert
testimony bears the burden of establishing that the proposed
expert and his or her testimony meets the requirements of Rule

2

702 by a preponderance of the evidence." *S.E.C. v. Tourre*, 950 F.Supp.2d 666, 674 (S.D.N.Y. 2013) (internal citations omitted). Rule 702 requires that "courts in this Circuit analyze the testimony to determine whether it usurps either the role of the trial judge in instructing the jury as to the applicable law or the role of the [factfinder] in applying that law to the facts before it." *In re Rezulin Prods. Liab. Litig.*, 309 F.Supp.2d 531, 541 (S.D.N.Y. 2004) (internal citations omitted).

Assuming the expert is qualified, which is not in dispute here, the testimony must be: reliable, relevant, and within the proper scope of expert testimony. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).

In this case, Quintero has been offered as an expert witness to calculate the amount of the unjust enrichment for Kossoff's services to Defendants. Quintero's report uses three different approaches to quantify the unjust enrichment including the income approach, the distributions approach, and the lodestar method.

3

Defendants dispute Quintero's calculation under the income and distributions approaches because both approaches are primarily calculated by taking 22% of Defendants' net income, terminal value, and distributions. Quintero admitted at his deposition that he used 22% as a figure because Kossoff told him that was his agreement with the Defendants. (Levine Decl., Ex. B (Quintero Dep.) at 54:2-12.)

Defendants seek to preclude any evidence of unjust enrichment in excess of a reasonable hour and rate calculation. The Court already ruled on this issue in its April 1, 2016 summary judgment opinion, which concluded that an hourly rate for services is used "[f]or the most part," but that there are "well-recognized exceptions" to the rule where "the value of the benefit" is "disproportionate to the value of services rendered." *Carlino v. Kaplan*, 139 F.Supp.2d 563, 565 (S.D.N.Y. 2001). Ultimately, the April 1, 2016 opinion concluded that based on that record, "there [was] no basis for the proposition that the value received by [Defendants] for Kossoff's work amounts to anywhere near 22% of FFA's past and future profits." However, the Court further found that "there are also no grounds for the Court to conclude that the value of those services . . . must necessarily equal Kossoff's regular billing rate."

4

Plaintiff has failed to introduce any evidence since the April 1, 2016 summary judgment opinion to demonstrate that the value of his services was 22%. In this case, Quintero's income and distributions approaches both primarily rely on Plaintiff's assertion that he had an agreement with the Defendants for 22% of FFA. This assertion in the absence of an agreement is not sufficient to survive a challenge on relevance grounds. These calculations based on 22% are likely to be more prejudicial than probative and are therefore excluded from evidence at trial.

However, Quintero's lodestar analysis is permissible and can be presented to the jury. Defendants challenge the hourly rate that Quintero used because it was the rate used for turnaround specialists and Defendants assert that Quintero was not qualified as a turnaround specialist. However, unjust enrichment is "measured by a defendant's unjust gain, rather than by a plaintiff's loss." *Schatzki v. Weiser Capital Mgmt.*, 995 F.Supp.2d 251, 253 (S.D.N.Y. 2014). Kossoff allegedly provided turnaround services to Defendants and therefore he will be allowed to try to prove at trial that he is entitled to unjust enrichment for the value of the work of a turnaround specialist.

Defendants also challenge Quintero's lodestar analysis because of the number of hours he uses in his calculation. Defendants believe Quintero should only be allowed to use 700 hours, which is the total number of hours Plaintiff accounted for in his time records. However, Plaintiff alleges that he spent significantly more time working for the Defendants. Defendants argue that an expert cannot rely on the party when the party's assurances conflict with the records. *Supply & Bldg. Co. v. Estee Lauder Int'l, Inc.*, No. 95 Civ. 8136, 2001 WL 1602976, at *5 (S.D.N.Y. Dec. 14, 2001) (excluding an expert report because the expert "based his report on his client's unrealistic assurances rather than available records" and "client's guarantees were not reliable and were contradicted by other data available"). However, in this case the record is not as clear. Felberbaum in his own deposition confirmed that Kossoff "absolutely" worked thousands of hours for FFA. Felberbaum Dep. at 410:1-4; 417:1-7. Thousands of hours far exceeds the 700 that were documented. Quintero is permitted to introduce his lodestar calculation for the number of hours Kossoff worked because Felberbaum's own admission greatly exceeds the number of hours to which Defendants seek to limit the lodestar calculation.

6

**2.  Admissibility of Ulseth**


Defendants challenge the admissibility of Ulseth as a fact witness for the Plaintiff.  Ulseth has no personal knowledge of the case, but has been designated to testify as a representative of Alcoholics Anonymous ("AA") about AA's policies for sponsors. This testimony is allegedly relevant because Felberbaum introduced a defense that he believed Kossoff's thousands of hours of work were performed as a favor without pay because Kossoff was Felberbaum's AA sponsor.  Felberbaum Dep. at 415:1-7.  It is undisputed that Plaintiff did not designate Ulseth as an expert and that Ulseth has not authored an expert report.


Rule 602 of the Federal Rules of Evidence states:  "A witness may testify to a matter only if . . . *the witness has personal knowledge of the matter*.  Evidence to prove personal knowledge may consist of the witness's own testimony.  This rule does not apply to a witness's expert testimony under Rule 703." Fed. R. Evid. 602 (emphasis added).  Here, Ulseth does not have any personal knowledge of the matter and is precluded from serving as a fact witness under Rule 602.  However, Ulseth will

7

be permitted to testify as an expert witness under Rule 703 if
she prepares an expert report and produces it to opposing
counsel in advance of trial.

## 3. The Liability of the Plaintiff on the Note

The Defendants have sought to bar the Plaintiff from
asserting that he owes less than $500,000 on the notes, which
has been the subject of previous motions. The Plaintiff has
conceded that the Defendants are entitled to an offset of
$515,000 against any award the Plaintiff received (Declaration
Howard Essner Response, ¶ 3). The amount due on the note is
therefore no longer at issue.

The Defendants in effect have renewed their motion for
partial summary judgment and the Plaintiff has asserted an
equitable defense to the liability on the note.

The Defendants' *in limine* motion is not an appropriate
vehicle for the summary judgment and it is denied as moot.

8

## 4.   The Form of Plaintiff's Exhibits

The Defendants have objected to the composite exhibits referred to in the Joint Pretrial Order.   The Plaintiff will provide the composite exhibits and identify the exhibits upon which they are derived.

**Conclusion**

The motion to disqualify Plaintiff's expert is granted in part, and denied in part; the motion to preclude Ulseth as an expert in the absence of a report is granted; the motion to bar Plaintiff from challenging the amount of the note is denied as moot in view of Plaintiff's concession; and, the motion to compel production and clarification of the composite exhibits is granted.

The parties will meet and confer on a date for trial in the first two weeks of April.

It is so ordered.

New York, NY
March *15*, 2017

ROBERT W. SWEET
U.S.D.J.

10